## DEXTER IMPROVEMENT ASSOCIATION v. DEXTER CHRISTIAN COLLEGE, Appellant.

### Division One, June 1, 1911.

1. **CONVEYING REAL ESTATE: Suit to Set Aside: Ultra Vires: Estoppel.** Where plaintiff was incorporated as a business company to deal in real estate, but never issued any stock, and was in fact organized to be a holding company of the title to certain real estate, which it was proposed by the town to donate to the county as the site for a court house, in the event the county seat was moved to the town, and its thirteen stockholders were chosen at a mass-meeting of citizens who had donated money to the general enterprise; and where, when their endeavor in securing the county seat had failed, the company in harmony with the desires of the donors, entered into an agreement with defendant, an educational corporation, to convey the grounds to it in case it would pay the taxes due, repair the buildings and conduct a college, and in pursuance thereto the

real estate company conveyed the property to defendant by warranty deed, and defendant has spent large sums of money and in good faith performed, plaintiff. cannot have that (its own) deed set aside as being a mere gift and *ultra vires*.

2. **SUIT BY CORPORATION: Not Authorized.** The general rule is that, in the absence of proof to the contrary, the law will presume that counsel who purport to represent litigants in court have authority to do so. But where the evidence conclusively shows that counsel had no such authority to represent the plaintiff corporation, and the answer asserts the suit is not the proper legal or corporate act of plaintiff, and the record conclusively shows that no one interested in the subject-matter of the suit authorized its institution, it will be dismissed.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort,* Judge.

REVERSED AND REMANDED (*with directions*).

*Ely, Kelso & Miller* for appellant.

(1) There is no question as to the right of the Dexter Improvement Association to make such conveyance as was made in this case. The conveyance was strictly within the scope of the authority conferred by its charter, but if it were otherwise, the question of its being an *ultra vires* contract could not be raised under the pleadings and facts in this case. While our courts have been very liberal in dealing with petitions in suits to quiet title under the statutes of this State, yet, we have failed to find any authority holding that a party could assault his conveyance in a suit to quiet title without informing the defendant of the fact, and, certainly, no court has gone so far as to permit a party to assault his own deed, in every way fair on its face, by merely objecting to its introduction as evidence and then offering testimony in support of his objection. (2) The doctrine of *ultra vires* when invoked for or against a corporation should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong. Railroad v. McCarthy, 96 U. S.

258; First Natl. Bk. v. Trust Co., 187 Mo. 495; Cass
Co. v. Insurance Co., 188 Mo. 1. The objection to ap-
pellant's deed on the ground that it was *ultra vires* had
no place in this case. 10 Cyc. p. 1072-B; Burgess v.
Railroad, 99 Mo. 496; 10 Cyc. p. 1075-E. (3) Acquies-
cence for a considerable time by a corporation, through
its efficient agency and the body of its shareholders,
in a state of facts, after knowldege, or after such a
length of time and such a condition of circumstances
that knowledge is to be inferred, will operate as a rati-
fication in pursuance of the well-settled principle in
the law of agency that a principle may ratify the un-
authorized act of his agent by acquiescence or even by
silence after being fully informed of the facts and cir-
cumstances attending the unauthorized act. Kitchen v.
Railroad, 69 Mo. 224; Tyrell v. Railroad, 7 Mo. App.
294; 10 Cyc. p. 1076. (4) The objection of respondent
that the deed was and is wholly void for the reason it
was entirely without consideration is without merit.
Bobb v. Bobb, 89 Mo. 412; Weiss v. Heitkamp, 127 Mo.
23; Draper v. Shoot, 25 Mo. 197; Hollecher v. Hollecher,
62 Mo. 267.

*N. A. Mozely* and *Louis F. Dinning* for respondent.

(1) This case was tried on the appellant's answer
and respondent's replication. Whether the amended
petition was a departure from the original is not now
important for the answer and the replication present
one issue. (2) Plaintiff corporation was organized
for the sole purpose of holding the title to the prop-
erty in question for the benefit of Stoddard county.
The warranty deed made by the president of the plain-
tiff corporation is absolutely void, for under the law
the corporation had no authority to donate this prop-
erty in the way they attempted to do, and therefore the
act cannot be ratified or made good. (3) Central
Trans. Co. v. Pullman Palace Car Co., 139 U. S. 60;

McCormick v. Bank, 165 U. S. 538; City of Goodland v. Bank, 74 Mo. App. 365. This contract, resulting in the warranty deed in question is absolutely void. Bank v. Stoneware Co., 2 Mo. App. 299; Bank v. Bank, 73 Mo. 153; New Land Hotel Co. v. Furniture Co., 73 Mo. App. 135; State ex rel. v. Trust Co., 144 Mo. 562; Kansas City v. O'Connor, 82 Mo. App. 655; Anglo-American Co. v. Lombard, 132 Fed. 721; Bank v. German American Co., 116 N. Y. 281; Bank v. Snider, 116 N. Y. 370; Bank v. Kennedy, 167 U. S. 362; Insurance v. Eby, 5 Conn. 560. (4) The contract was not the act of the corporation and did not bind it. The president of a corporation is its agent for certain purposes, but he has no power to convey the real estate belonging to the corporation, except he does it by order of its board of directors. Degnam v. Thoroughman, 88 Mo. App. 62; Barnhardt State Bank v. Fesler, 89 Mo. App. 217; Union National Bank v. State National Bank, 155 Mo. 95; Tyler Estate v. Hoffman, 146 Mo. App. 510. (5) When plaintiff learned that the objects of its incorporation had failed it was the duty of the stockholders to have the corporation legally dissolved, as provided by Sec. 2996, R. S. 1909; then it would have been the duty of the trustee to sell this property and give the proceeds thereof to the stockholders. Richards v. Coal & Mining Co., 221 Mo. 165; McCoy v. Farmer, 65 Mo. 249; Morrill v. Railroad, 96 Mo. 177. (6) Section 650, as amended by the Legislature, R. S. 1909, now Sec. 2535, authorizes any relief to which a party is entitled and the pleadings in this case make the issue, is the deed in question valid? Simpson v. Stoddard County, 173 Mo. 421.

WOODSON, J.—The plaintiff brought this suit to the circuit court of Stoddard county, at the September term, 1906, thereof, against the defendant, seeking to have a certain bond reformed, which was executed by the latter to the former upon the grounds of mistake.

The petition in substance stated that the plaintiff conveyed certain property by a general warranty deed to defendant; and that in turn the latter had executed to the former the bond before mentioned. That by mistake of the scrivener the bond did not in truth and fact fully recite the agreement and understanding of the parties to the bond, alleging that the understanding was that the defendant should expend $1000 per year for ten years, and that the bond erroneously stated that defendant was to expend upon the premises the sum of $10,000 within the period of ten years from and after its date; and that the intention of the parties was that the defendant was to maintain a nine months' school on said property in each year, for a period of ten years, while the bond left the number of months of each term in each year blank.

Sometime afterwards, the plaintiff filed an amended petition to quiet title under section 650, Revised Statutes, 1899, merely stating that the plaintiff was the owner of the property in fee simple, and that the defendant claimed some right, title or interest in and to said property, which was adverse and prejudicial to plaintiff's title. To that petition the defendant filed the following answer, formal parts omitted:

"Now comes defendant and for answer to plaintiff's amended petition admits that both plaintiff and defendant are corporations as therein alleged, and admits that defendant claims to be the owner in fee simple of the property decribed in said petition.

"Further answering, defendant denies each and every allegation in plaintiff's petition contained, and asks to be hence dismissed with its costs.

"Further answering, defendant says that it acquired the absolute title in fee simple to the property described in plaintiff's petition on the 19th day of June, 1902, and is still the owner in fee simple of said property; that defendant entered into possession of said property on said 19th day of June, 1902, and has been

in the open, notorious, adverse and peaceable possession of said property continuously from said 19th day of June, 1902, up to the present time.

"That no claim, title or interest of any kind whatever has ever been asserted by plaintiff during all this time to said property, and plaintiff avers that this suit is not the proper legal and corporate act of plaintiff.

"Further answering, defendant says that it has at no time had information of any kind or character whatever that plaintiff claimed any title to said property after it was acquired by defendant as aforesaid on said 19th day of June, 1902, and at this time has no knowledge or information sufficient to form a belief as to what induces plaintiff to make the claim of title set out in plaintiff's petition.

"Wherefore, the defendant having fully answered again prays judgment and for costs."

The reply was as follows:

"Now comes the plaintiff in the above cause and for replication to the answer of defendant filed herein, denies each and every allegation, matter, fact and thing of new matter in said answer set out and pleaded.

"Plaintiff further replying avers that the attempted conveyance of the property in suit by the president and secretary of plaintiff to the defendant, on June the 19th, 1907, was not the corporate act of plaintiff or its stockholders, but was attempted to be executed by its president and secretary under the mistaken belief that plaintiff had authorized the same, which plaintiff avers is not true, and further avers that the execution of said deed and the attempted conveyance of said property thereby was without the knowledge of plaintiff's stockholders and against their will; that said alleged conveyance was and is wholly without consideration and void; that plaintiff's board of directors were wholly without power or authority to give away, and its president and secretary were wholly without power to execute a valid deed giving away (as was

attempted to be done by said deed) all and every item of property constituting the capital stock of said plaintiff and thereby rendering plaintiff wholly insolvent.

"Plaintiff denies as aforesaid that said deed is valid and binding upon it and alleges that the same was executed without power or authority as aforesaid, but alleges that said deed does not even express the design and intent of the board of directors of plaintiff nor of the defendant; that it was the understanding and agreement between the directors of plaintiff and the defendant that said deed should be a conditional one and not an absolute conveyance; that said defendant should expend the sum of one thousand dollars annually upon said property for a period of ten years from the date of said deed, and should operate and maintain for a period of nine months in each year for a period of ten years a successful collegiate school at said premises, and at the end of said ten years the title to said property should vest in said defendant. Plaintiff avers that said defendant has not complied with the conditions on which said deed was executed and at the institution of this suit was making no attempt to do so and by reason thereof all their interest in or to said property is forfeited and said property reverted to plaintiff."

The facts of the case are virtually undisputed and are substantially as follows:

The plaintiff is a corporation duly organized under the laws of this State, as a business association, and was by its charter authorized to deal in real estate.

The defendant likewise was duly organized as a corporation under the laws of this State, as an educational institution, for the purpose of maintaining and conducting a college at Dexter, Missouri.

The history of the property involved in this case is briefly as follows:

Sometime prior to the year 1895, the question of the removal of the county seat of Stoddard county

from Bloomfield to Dexter was agitating the minds of the people of that county. In order to induce the voters of the county to support the claim of Dexter in its contest for the county seat, the citizens of the latter proposed to donate to the county a suitable site and appropriate buildings for courthouse purposes. In pursuance to that purpose the citizens of Dexter, by a popular subscription, secured a building fund, some donating cash, others material and labor, all valued at several thousand dollars. On August 16, 1895, the real estate upon which the buildings, now in controversy, were subsequently erected, was acquired by plaintiff from the St. Louis, Iron Mountain & Southern Railway Company, for the purposes before mentioned, by a general warranty deed. The consideration expressed in the deed was $2000, but no part thereof was ever paid, and probably it was never the intention of the parties that it should be. After this conveyance was made to the plaintiff, the city of Dexter donated $2000 for the purpose of purchasing a small strip of ground adjacent to the property in controversy, the object being to widen the street around that property.

The object of organizing the plaintiff company was to have some one to represent the citizens of Dexter in holding the donations, taking title to the property, improving the same, and conveying it to the county in case the county seat was changed from Bloomfield to Dexter. With that object in view a public meeting of the citizens of that city was held, and they selected thirteen of their number as directors, who were afterwards named in the articles of incorporation as directors, and sole stockholders. While the certificate of incorporation showed that those thirteen men were the sole stockholders, yet as a matter of fact the corporation never issued any stock, nor did it ever intend that it should do so. As previously stated the articles of incorporation showed that the company was empowered to buy and sell real estate, yet the president thereof

testified on the trial that it was incorporated under Chapter 42, Article 8, Revised Statutes, 1889, regarding business corporations, but it was in fact incorporated for the purpose of creating a depository for the title to the property, which was known as the Courthouse property of Dexter.

The corporation never transacted any business whatever except to hold the title to that property, erect the buildings thereon, and convey the same to the defendant, which will be presently mentioned. Every witness in the case testified that there never was any intention that the plaintiff company should buy or sell real estate, except the tract in question, or to transact any business either directly or indirectly for profit, other than what would naturally flow to the public at large from their donations and the erection of the building before mentioned for the purpose aforesaid.

In pursuance to that general understanding of the citizens of Dexter, the plaintiff company erected a courthouse on the tract of land in question, with the donations of money, labor and materials before mentioned.

During that time, two terms of the circuit court were held annually at Bloomfield and two at Dexter.

Dexter lost in the county seat removal question, and thereafter she also lost the branch court before mentioned, which had been established by an act of the Legislature. That act having been repealed, all the terms of the court were from thence on held in Bloomfield.

The building in question had never been fully completed, and when the sitting of the court at Dexter was discontinued, the building was left standing vacant, was running down for want of proper care and attention; taxes to the amount of $650 had accumulated against it; a stroke of lightning had partially unroofed it; the building was looking badly; much of the plas-

tering had fallen off, and the premises were otherwise damaged, and growing worse all the time.

The plaintiff company had no money or means by which to procure the necessary money with which to pay its obligations or to repair the building. Delay meant total decay and destruction of the building. Confronted with this condition of affairs, the citizens of Dexter, who had made the donations for building the courthouse, as well as the board of directors of the plaintiff company, began to put forth efforts to secure the location and establishment of some kind of a school in Dexter, and as an inducement therefor, this building was held up to view.

The plaintiff company carried on negotiations with different parties with that object in view, but all to no avail. Finally, negotiations were begun with certain members of the Christian Church, which ultimately resulted in the incorporation of the defendant company, and its taking over the property in controversy upon the terms to be presently stated.

In pursuance to the intention of the citizens of Dexter, who made the donation for the erection of the building, and in obedience to an order of the board of directors, the plaintiff, by a general warranty deed in proper form, conveyed the premises to the defendant on June 9, 1902, which deed was duly recorded September 18, 1902. At the same time, and constituting a part of the same transaction, as shown by the pleadings in the case, the defendant college executed to the plaintiff company a bond, whereby it obligated itself to expend by way of improvemets on said real estate, and in the purchase of furniture, fixtures, library and apparatus for the use of the college, the sum of $10,000 within the period of ten years next ensuing from the date of said bond, and further agreeing to maintain and conduct for a period of ten years a collegiate school on the premises in question for a term of ''not less than —— months'' in each of said years. It further

obligated the defendant to keep the property insured for a sum not less than $8000; and in the event of its destruction by fire, the insurance money was to be used to reconstruct the building, or to be turned over to the plaintiff, or its duly authorized agent. This bond was drawn up by the plaintiff company's agent and submitted to the defendant college for approval and execution, which was duly approved and executed by it and delivered to the plaintiff, whereupon the deed from the plaintiff to defendant was also delivered to the latter.

Immediately thereafter the defendant took possession of the premises and began to comply with the terms of its bond, and continued to do so in good faith up to the date of filing this suit.

Upon taking possession of the property, the defendant induced the county court of Stoddard county to release therefrom the accumulated taxes, which amounted to $666.67.

In pursuance to an understanding, the St. Louis, Iron Mountain & Southern Railway Company refused or neglected to present its claim of $2000, the purchase money of the land in question, for payment, against anyone, and consequently it had become barred by the Statute of Limitation before this suit was instituted.

In compliance with its bond, the defendant had, up to the time of the institution of this suit, paid out $3573.11; had secured by subscriptions the sum of $2500 for a building fund, and in addition had secured about $3500 in building notes. It also repaired the roof of the building, completed those parts which were uncompleted when it acquired the property, constructed sidewalks, repaired the plastering, put on ceilings, kept the building in good repair, insured the building as per agreement, conducted the school, and was making every effort to raise a sum of not less than $8000 to build a dormitory at the time the suit was filed.

During all that time no one on the part of the plaintiff had ever raised or questioned the validity of

defendant's title to the property, nor questioned its compliance with the terms of its bond.

The directors of plaintiff and the donors of the building fund, present and testifying at the trial, agree in their testimony that all understood that the property was to be taken over by the defendant in the manner that it was taken; that there had never been any action of any kind on the part of the plaintiff, or any of its directors, to question the title of the defendant to the property, or to question its compliance with the terms of its bond; and that no action was ever ordered brought against the defendant by any of them for any purpose.

(And I might here add, that in so far as I am able to see, this record is a blank as to by what authority this suit was instituted).

On the trial the plaintiff offered in evidence the deed from the Railroad Company to itself, before mentioned, conveying to it the real estate in controversy, and thereupon rested its case.

Thereupon the defendant offered in evidence the general warranty deed from the plaintiff to it, before mentioned, conveying the same real estate to it, the defendant.

To this offering the plaintiff by counsel objected to the introduction of the deed for the following reasons:

1. That its execution was not an act of the corporation plaintiff nor of the stockholders, but was executed by the president and secretary thereof under a misapprehension of the facts.

2. If it was the act of the board of directors or stockholders, it was *ultra vires* and void for the reason that it was in excess of the charter power.

3. The alleged conveyance was a gift of all the property of the plaintiff and not a sale.

4. That the alleged conveyance was and is wholly

void for the reason that it was entirely without consideration.

And on these objections counsel for plaintiff asked permission to offer proofs.

To this request, the defendant, by its attorney, when the witness was sworn, in support of the objections to the deed, made this objection to the taking of the testimony:

1. For the reason that the deed on its face appears to be a fair and perfect deed, and purports to be regularly made by the plaintiff corporation.

2. That the deed cannot be attacked by plaintiff because it is an instrument of its own act under the pleadings in this case.

3. That the deed shows upon its face to have been recorded in the year 1902, and there is nothing in the deed to indicate that they did make the conveyance against the public policy, and, therefore, it has been at all times notice to everyone interested in the company, and could not at this time be attacked as being *ultra vires*. There is no allegation anywhere that this instrument was made without the authority of the plaintiff, and none to-day made at this time, because even though it was a contract *ultra vires*, it is not in contravention of public policy, and has been acquiesced in, and is not questioned by a mere recital of the plaintiff or by anyone interested in the Dexter Improvement Association, and is sufficient notice to bind plaintiff at this time.

Those objections were overruled and the court proceeded to hear testimony, over the objection and exception of this defendant.

The substance of that evidence has heretofore been set forth.

Thereupon the court found for the plaintiff, and rendered the following decree:

"That the plaintiff was the owner in fee simple of the property in controversy and that the defendant

had no right, title or estate or interest in and to said property.''

After moving unsuccessfully for a new trial the defendant duly appealed the cause to this court.

Counsel for appellant have assigned the following errors:

1. The court erred in overruling motion of defendant to strike out plaintiff's replication because of variance between said replication and petition of plaintiff. [Replication referred to is the replication filed on the 15th day of June and during the progress of the trial, and printed in the record.]

2. The court erred in overruling motion of defendant to strike out all evidence offered by plaintiff on plaintiff's (respondent's) motion to exclude from the evidence a certain warranty deed of date the 10th day of June, 1902, executed by plaintiff (respondent), conveying to the defendant (appellant) the property described in petition of plaintiff.

3. The court erred in admitting incompetent, irrelevant and immaterial testimony on the part of the plaintiff over the objection and exception of defendant.

4. The court erred in excluding competent and material testimony offered by the defendant, appellant herein.

5. The court erred in its finding and judgment, which was and is against the law of the case, is not supported by equity, and is against the evidence.

6. The finding and judgment of the court is in conflict with the evidence, the law and equity of the case.

7. Under all the evidence offered the finding and judgment of the court should have been for the defendant, appellant herein.

8. The court erred in overruling appellant's motion for a new trial.

9. The court erred in overruling appellant's motion in arrest of judgment.

10. The finding and judgment of the court are against the evidence, the facts under the evidence, and upon all the testimony should have been for appellant.

From a reading of the statement of this case, it must be apparent to the most casual observer, that the merits of the same are wholly with the appellant, and that respondent's contentions are baseless and entirely destitute of all merit; and the case might be disposed of in this summary manner, except for the fact that the record conclusively shows that no one interested in the subject-matter of the suit authorized its institution.

That being true, it follows that there is no party plaintiff before the court, whose rights can be adjudicated in this case.

We are not unmindful of the rule that, in the absence of proof to the contrary, the law will presume that counsel who purport to represent litigants in court have perfect authority to do so; but in the case at bar, the evidence conclusively shows that counsel herein had no such authority from any of the interested parties. [Miller v. Continental Assur. Co., 233 Mo. 91.]

Upon that state of the record, we must reverse the judgment and remand the cause to the circuit court with directions to dismiss the suit. All concur.